IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| TRAVIS X. C., | * | |
| Plaintiff, | * | |
| v. | | Case No.: GJH-18-1210 |
| | * | |
| ANDREW SAUL, | | |
| | * | |
| Defendant.[1] | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Travis X. C. seeks judicial review of a final decision of Defendant, the Commissioner of Social Security ("Commissioner"), finding him not disabled and denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. ECF No. 1. Pending before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 12,[2] and the Commissioner's Motion for Summary Judgment, ECF No. 16, which were referred to U.S. Magistrate Judge Thomas M. DiGirolamo pursuant to Standing Order 2014-01. The Court has reviewed Judge DiGirolamo's June 7, 2019 Report and Recommendation ("R&R"), ECF No. 19, the Commissioner's objections, ECF No. 21, and Plaintiff's response, ECF No. 22. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons that follow, the R&R is adopted in part and rejected in part, Plaintiff's Motion for

---

[1] Andrew Saul is now the Commissioner of Social Security. He is therefore substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).

1

Summary Judgment is denied, the Commissioner's Motion for Summary Judgment is denied, and the case is remanded for further proceedings.

## I. BACKGROUND

### A. Disability Determination Framework

A person is legally disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The relevant Social Security Administration regulations set forth a comprehensive five-step process for making a disability determination:

> [T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Before proceeding to steps four and five to determine whether the claimant can perform any work, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is the most the claimant can still do despite the limitations affecting his ability to work. *See Lewis v. Berryhill*, 858 F.3d 858, 861–62 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Id.* at 861.

## B. Procedural History

Plaintiff filed applications for DIB and Supplemental Security Income ("SSI") on June 30, 2010. ECF No. 7-3 at 10.[3] He alleged that he had been disabled since September 15, 2008, due to a stroke, hypertension, depression, panic attacks, and degenerative disc disease in his back, neck, and shoulder. ECF No. 7-4 at 2, 13; ECF No. 7-7 at 3; ECF No. 7-22 at 54. Plaintiff's SSI application was approved as of June 30, 2010, but the Commissioner denied his DIB application initially and again upon reconsideration. ECF No. 7-3 at 10; ECF No. 7-4; ECF No. 7-5 at 2–11; ECF No. 7-16 at 23.

Upon Plaintiff's request, ALJ María Alexander Nuñez held a hearing on January 18, 2013. ECF No. 7-3 at 7–61. On March 18, 2013, ALJ Nuñez issued another unfavorable decision finding that Plaintiff was not disabled between the alleged onset date of his disability—September 15, 2008—and the date he was last insured for benefits—March 31, 2009. *Id.* at 2–6. Plaintiff appealed ALJ Nuñez's decision to this Court, which, upon the Commissioner's consent, remanded the case on January 15, 2014. ECF No. 7-17 at 2–3.

On remand, ALJ Theodore P. Kennedy held a second hearing, and on August 1, 2014, he issued a decision once again finding Plaintiff not disabled from the alleged onset date of disability through the date last insured. ECF No. 7-16 at 20–46. Plaintiff again appealed to this Court, and on September 7, 2016, this Court remanded the case to the Commissioner, holding that the ALJ's decision frustrated meaningful review. ECF No. 7-23 at 2–23.

On remand for the second time, ALJ Melvin G. Olmscheid held a third hearing. ECF No. 7-22 at 44–110. On June 15, 2017, ALJ Olmscheid issued a decision finding that Plaintiff (1) had not engaged in substantial gainful activity from his alleged onset date of disability through his

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

date late insured; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. § 404(P)(1). *Id.* at 20, 22.

ALJ Olmscheid then determined that Plaintiff had the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except he can perform work that only occasionally requires balancing, stopping, kneeling, crouching, crawling, and climbing (except never requires the use of ladders, ropes, and scaffolds.) He can perform jobs that allow frequent exposure to extreme cold, extreme heat, and irritants such as fumes, odors, dust, gases, and poorly ventilated areas. He needs to avoid hazards. He can perform jobs consisting of simple (1- to 3-step tasks), routine, and repetitive tasks, in a work environment without production rate pace, and with only occasional interaction with co-workers and the public. Time off task during the workday can be accommodated by normal breaks; i.e., he is able to sustain concentration and attention for at least two hours at a time.

*Id.* at 24–25. Based on his assessment of Plaintiff's RFC, ALJ Olmscheid then found that Plaintiff (4) was unable to perform past relevant work; but (5) could perform other work in the national economy. *Id.* at 33, 34. ALJ Olmscheid thus found that Plaintiff was not disabled during the relevant period and therefore did not qualify for DIB. *Id.* at 35. The ALJ's decision became the Commissioner's final decision on April 3, 2018. *Id.* at 2–6; *see* 20 C.F.R. § 404.984(b)(2).

On April 25, 2018, Plaintiff filed a Complaint in this Court seeking judicial review of the Commissioner's decision. ECF No. 1. Plaintiff filed a Motion for Summary Judgment on September 30, 2018, ECF No. 12, the Commissioner filed a Motion for Summary Judgment on January 17, 2019, ECF No. 16, and Plaintiff filed a reply on February 6, 2019, ECF No. 18. This matter was referred to Judge DiGirolamo pursuant to Standing Order 2014-01, and on June 7, 2019, Judge DiGirolamo issued his R&R. ECF No. 19.

In the R&R, Judge DiGirolamo concludes that the ALJ's decision precludes meaningful review because the ALJ failed to adequately explain his conclusions. Specifically, in his RFC assessment, the ALJ failed to define the "production rate pace" limitation, ECF No. 19 at 11, failed to explain how the evidence in the record demonstrated that Plaintiff could actually perform the tasks required by "light work," *id.* at 13, and failed to account for Plaintiff's ability to remain on task for a full workday with only the workday's normal breaks despite also finding moderate limitations in Plaintiff's ability to concentrate, persist, or maintain pace, *id.* at 10. According to the R&R, the ALJ also failed to explain how Plaintiff could remain on task for 80% of the workday despite his difficulties with concentration, persistence, and pace. *Id.* at 12. Judge DiGirolamo therefore recommended that the Court deny the Commissioner's Motion for Summary Judgement and grant Plaintiff's Motion for Summary Judgment. *Id.* at 14.

Judge DiGirolamo also recommended that the Court reverse the Commissioner's final decision and remand the matter for an award of benefits. *Id.* at 13–14. He concluded that, although the proper course of action when the Court determines that an ALJ's opinion precludes meaningful review is typically to remand for additional investigation or explanation, this case presented an exception to that rule. He stated that because this case has already been remanded twice for further consideration and because the ALJ's decision left the Court to guess as to how Plaintiff could perform the relevant functions in light of his limitations, remanding for a third time would serve no purpose and this Court should find that substantial evidence does not support the ALJ's decision. *Id.* at 13–14.

The Commissioner filed an objection to the R&R on June 21, 2019, ECF No. 21, and Plaintiff filed a response on July 5, 2019, ECF No. 22.

## II. STANDARD OF REVIEW

In reviewing an ALJ's decision, the Court must determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commission of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

Moreover, where, as here, a district judge is reviewing the R&R of a magistrate judge, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). However, the district judge "need only conduct a *de novo* review of those portions of the Magistrate Judge's Report and

Recommendation to which objection is made." *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 534 (D. Md. 2011). For "those portions of the report for which there is no objection, the district court 'must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* (quoting *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005)).

## III. DISCUSSION

The Commissioner raises three objections to the R&R. First, the Commissioner contends that the R&R disregards the facts and misapplies the law by concluding that the ALJ did not properly explain the basis for Plaintiff's mental RFC assessment. Second, he contends that the R&R disregards the facts of the case and the ALJ's discussion of those facts by concluding that the ALJ did not properly explain the basis for Plaintiff's physical RFC assessment. Third, the Commissioner contends that even if the ALJ's explanations were deficient, the R&R proposes the incorrect remedy. The Court concludes that the Commissioner's objections to Judge DiGirolamo's recommendations with respect to the ALJ's RFC assessment lack merit, but the proper remedy is to remand to the Commissioner for further proceedings.

### A. RFC Assessment

Once an ALJ makes a finding that a plaintiff suffers from difficulties in a relevant functional area, "the ALJ must either include a corresponding limitation in [his] RFC assessment, or explain why no such limitation is necessary." *See Talmo v. Comm'r Soc. Sec.*, No. ELH–14–2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015). These limitations must account for the claimant's ability to perform relevant functions for a full workday. *See Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019); *Mascio*, 780 F.3d at 637 (finding that ALJ's RFC assessment was "sorely lacking"

7

because, among other things, the ALJ "said nothing about the [the plaintiff's] ability to perform job-related functions] for a full workday).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, … meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311; *see also Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) ("Show your work."). "Remand may be appropriate … where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (quoting *Cichoki v. Astrue*, 729 F.3d 127, 177 (2d Cir. 2013)) (internal punctuation omitted). Here, the ALJ's assessment of Plaintiff's mental and physical RFC failed to provide the necessary logical explanation, so the opinion frustrates meaningful review.

### i. Mental RFC

The ALJ failed to explain why his proposed limitations—the workday's normal breaks and no production rate pace—adequately account for his finding that Plaintiff had moderate limitations in concentration, persistence, and pace during the period in question. First, even though the ALJ found that Plaintiff "had moderate limitations" in the "ability to concentrate, persist, or maintain pace," ECF No. 7-22 at 24, he also found in his RFC assessment that Plaintiff's "[t]ime off task during the workday can be accommodated by normal breaks; i.e., he is able to sustain concentration and attention for at least two hours at a time," *id.* at 25. Absent from the ALJ's opinion, however, is any explanation reconciling these two findings. *See Capps v. Berryhill*, No. CBD-17-2438, 2018 WL 4616018, at *5 (D. Md. Sept. 26, 2018) ("When a

durational limitation is included, such limitations must consider that the normal 8-hour workday already includes breaks approximately every two (2) hours and provide further explanation as to how that restriction 'adequately accounts for a moderate limitation in the ability to stay on task' or else it does not meet the *Mascio* requirements."); *Talmo*, 2015 WL 2395108 at *3 (noting the "apparent discrepancy" between a finding of moderate limitations of concentration, persistence, and pace and an RFC without any related limitations).

Although the ALJ described some evidence regarding Plaintiff's concentration, persistence, and pace, including Plaintiff's own testimony "that he could sit comfortably for two hours," ECF No. 7-22 at 29, and Dr. Andert's conclusory testimony that "[t]ime of tasks could be accommodated by normal breaks," *id.* at 28, he failed to "build an accurate and logical bridge from [that] evidence to [his] conclusion" that Plaintiff had moderate limitations in concentration, persistence, and pace but did not require accommodations beyond those provided in a normal workday, *see Capps*, 2018 WL 4616018 at *6 (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)) (internal quotations omitted); *Puryear v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-3386, 2016 WL 4444660, at *3 (D. Md. Aug. 23, 2016). This failure to provide a "logical explanation" connecting the evidence and the conclusion frustrates meaningful review.

Second, the ALJ failed to define the only other limitation he included in Plaintiff's RFC assessment related to concentration, persistence, or pace: the capacity to only perform jobs "in a work environment without production rate pace." ECF No. 7-22 at 25. The ALJ's use of the term "production rate pace," without providing a definition for the term, does not provide the Court with "enough information to understand what [that] term[] mean[s]." *Thomas*, 916 F.3d at 312. The lack of definition "makes it difficult, if not impossible," for the Court to assess whether the inclusion of that limitation in Plaintiff's RFC is supported by substantial evidence. *Id.*; *see also*

*Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding that the ALJ's use of the term "non-production oriented work setting," which is not defined by the regulations or case law or otherwise self-explanatory, prevented meaningful review because the reviewing court could not determine what the ALJ meant by the term or whether there was a "logical bridge" between the evidence in the record and the ALJ's inclusion of the limitation).

The Commissioner contends that the ALJ does define "production rate pace" when he summarizes Dr. Andert's testimony that Plaintiff "would not be able to tolerate … a fast-paced work environment such as an assembly line." *See* ECF No. 7-22 at 28. The Commissioner argues that this evidence provides a sufficient definition for what the ALJ meant by "production rate pace" because in *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502 (D. Md. June 17, 2019), this Court recently determined that the ALJ's inclusion of a provision in the RFC assessment limiting the plaintiff to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was a sufficiently "clear explanation" of the limitation. 2019 WL 2503502 at *2.

The instant case is distinguishable from *Teresa B.*, however. Unlike in *Teresa B.*, where the ALJ provided his own definition immediately following his use of "production-rate pace," the ALJ in the instant case did not provide any explanation of what *he* intended by the "production rate pace" limitation.[4] Because the ALJ did not provide the proper "logical bridge" between his conclusion and a doctor's testimony that he summarizes three pages later, the Court

---

[4] The ALJ also failed to define "production rate pace" in his hypothetical to the Vocational Expert ("VE") about the types of work Plaintiff could do, so the Court is also unable to learn from the record what the ALJ meant by his use of the term. ECF No. 7-22 at 99.

is "left to guess" whether this evidence is the basis for the ALJ's conclusion regarding "production rate pace." *Monroe*, 826 F.3d at 189; *Mascio*, 780 F.3d at 637.[5]

### ii. Physical RFC

The ALJ also failed to explain how he concluded from the evidence that Plaintiff could actually perform the tasks required by "light work." Although it is true that the ALJ referenced an abundance of evidence with respect to Plaintiff's physical impairments during the period in question, including Plaintiff's ability to walk, stand, and lift, ECF No. 7-22 at 29–30, the ALJ never actually explained how he concluded, based on that evidence, that Plaintiff could perform the tasks required by "light work." "The ALJ therefore failed to build an 'accurate and logical bridge' from the evidence he recounted to his conclusion about [Plaintiff's] residual function capacity." *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (remanding where the ALJ failed to explain how, based on his summary of the evidence, he concluded the plaintiff could perform "medium work").

---

[5] The Commissioner also objects to the R&R's conclusion that the ALJ "failed to explain how, despite Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace (citation omitted), he could remain on task for more than 80% of an eight-hour workday." ECF No. 19 at 12. The Commissioner argues that this conclusion erroneously inverts the burden of proof from Plaintiff to the Commissioner. ECF No. 21 at 6. The R&R's conclusion refers to a hypothetical that the ALJ posed to the VE during the portion of the hearing where the ALJ tried to determine at steps four and five whether there were any jobs Plaintiff could perform given his RFC. ECF No. 7-22 at 102–103. Evidence provided by Dr. Branch and Dr. Ansel suggested that Plaintiff could only be on task for 80% of the day, so the ALJ asked the VE what jobs would be available to an individual who fits that description. The VE responded that there were no available jobs in the national economy for someone who is only on task for 80% of the day. Thus, the R&R's discussion of this evidence appears to relate to step five of the disability determination, where the Commissioner does indeed have the burden of proof. *Lewis*, 858 F.3d at 861. Moreover, because the Court is remanding this case based on an insufficient RFC assessment, which occurs between steps three and four of the disability determination, it need not reach any issues related to step five. In the interest of a comprehensive review on remand, however, the Court will note that the ALJ does need to explain which evidence he chooses to credit and which evidence he chooses to discredit and why. *Monroe*, 826 F.3d at 189 ("We have held that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.") (internal quotations omitted).

### B. Appropriate Remedy

Where, as here, a reviewing court "has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Radford v. Colvin*, 734 F.3d 288, 295 (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). The Court may, however, reverse the agency's decision without remanding for further proceedings "where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974); *see Seavey v. Barnhart*, 276 F.3d 1, 10–12 (1st Cir. 2001) (holding that "the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or to deny benefits").

Here, the Court's decision is based on the ALJ's inadequate explanation of his assessment of Plaintiff's RFC. However, the Court is unable to definitively conclude that "the record does not contain substantial evidence to support a decision denying coverage," *see Breeden*, 493 F.2d at 1012, because the record does appear to contain conflicting evidence, particularly with respect to the opposing testimony provided by Dr. Andert and Dr. Ansel. "Given the depth and ambivalence of the medical record, the ALJ's failure to adequately explain his reasoning precludes this Court … from undertaking a 'meaningful review' of [the ALJ's findings]." *Radford*, 734 F.3d at 296 (quoting *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)). Moreover, "[j]ust as it is not our province to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ, it is also not our province … to engage in these exercises in the first instance." *Id.* (internal citations and

quotations omitted). Because any future review would be aided by a more thorough explanation of the ALJ's RFC assessment, the proper remedy is "to remand to the agency for additional investigation or explanation." *See id.* at 295 (remanding where record contained conflicting evidence with respect to plaintiff's alleged disability and ALJ failed to adequately explain his reasoning).

**IV.    CONCLUSION**

For the foregoing reasons, the R&R is adopted in part and rejected in part, Plaintiff's Motion for Summary Judgment is denied, the Commissioner's Motion for Summary Judgment is denied, and this case is remanded for further proceedings. A separate Order shall issue.

Date: <u>September   20 , 2019</u>                    <u>  /s/                                           </u>
                                                                          GEORGE J. HAZEL
                                                                          United States District Judge